(31 Abb. N. C. 97.)

### TALCOTT v. CANTON MILLS CO.

(Court of Arbitration of the Chamber of Commerce.    February, 1894.)

FACTORS AND BROKERS—GUARANTY BY BROKER—RESCISSION OF SALE.
    A factor who guaranties sales made by him on commission is entitled to credit for goods which he had sold and charged to himself in his account of sales, but afterwards received back from the buyers, pursuant to authority given by his principal to settle a dispute as to the quality, or recovered from the buyers for fraud in procuring the sale.

Arbitration of controversy between James Talcott and the Canton Mills Company respecting the liability of said Talcott for the price of goods sold by him as commission merchant for said Canton Mills Company.

FANCHER, Official Arbitrator.    The Canton Mills Company in 1893 consigned certain goods to James Talcott, to be sold by him as a commission merchant, and the payment for sales thereof was by him to be guarantied.    The contract between the parties is not produced, but the statement of its import by both parties is substantially the same.    Two sales of flannel made by the consignee—one of 7 pieces, for $52.53, February 16th; and the other of 26 pieces, for $107.72, April 8th—were reported to the consignor, and credited to it at the time in the consignee's account of sales. In May and June six other sales of 150 pieces of De Soto flannels at 11 cents per yard, and 126 pieces of the same goods at 13½ cents per yard, were likewise reported and credited.    All the above sales were reported as made to Weil, Dreyfuss & Co., of Boston, Mass. The consignee admits his liability to pay the consignor for these May and June sales, except for the 99 pieces below mentioned, returned to Talcott, and 51 pieces afterwards recovered back by replevin.    In the October account of James Talcott he charges back to the consignor the goods sold in February and April, and of the

other sales he also charges back 99 pieces of the flannels sold at 11 cents per yard, and 51 pieces of the flannels sold at 13½ cents per yard. To these four items the consignor objects, and the legality of these revocations of credit to the consignor is submitted to this court for decision.

From the correspondence between Talcott and Weil, Dreyfuss & Co., it appears that the purchasers had claimed the right to reject a part of the De Soto flannels because they were not equal to sample in quality. If this objection were well founded, it would be chargeable to the manufacturer, and not to the commission merchant. Talcott wrote to the manufacturer July 26th, stating the complaint, and that it would be necessary either to take back the 150 pieces of flannels complained of, or to make some allowance on the same, and suggesting that the matter of settlement be left to him. He was given full authority to settle according to his judgment, by letter of July 27th. Not being able to agree with the purchasers upon the allowance to be made, he elected to receive back 99 pieces of the goods, and cancel the sale as to them. The title thus reverted to the owner of the goods, namely, the Canton Mills Company, and the 99 pieces thus received back by Talcott are still held by him for its account. The consignor, having previously received credit for these goods on the report of sale, was properly charged with this item, and will, of course, be entitled to the proceeds when the goods are sold. In the fall of 1893, Weil, Dreyfuss & Co. failed, and it then transpired that the statements of its condition made by the firm on purchasing the goods were false, and that the firm was at that time insolvent. Talcott recovered back from the firm, or its receiver, the goods sold in February and April, and 51 pieces of the De Soto flannels, and seeks to charge back these goods so recovered, and previously reported by him as sold. These 51 pieces of De Soto flannels were not returned by arrangement with the purchasers, as were the 99 pieces above referred to. They had been accepted as satisfactory by the purchasers, and no agreement for their return had at any time been contemplated. This item, therefore, stands on the same footing as the February and April sales, and the propriety of these three charges depends upon the liability of the commission merchant for goods of his principal, obtained from him under false representations, —representations which entitled him or his principal to avoid the sale, and demand return of the goods. Assuming that by the contract between the parties the commission merchant undertook to guaranty the payment for goods sold, yet, in contemplation of law, the 84 pieces recovered of Weil, Dreyfuss & Co. after their failure were never sold. They were obtained from the commission merchant by fraud, and he therefore never legally parted with the possession; nor did the consignor part with the ownership. The sale, being tainted with fraud, was voidable. Ash v. Putnam, 1 Hill, 302; Nichols v. Michael, 23 N. Y. 264, 270. The right of reclamation remained both in Talcott, the factor, and in the Canton

Mills Company, the owner.  The New York court of appeals has held that a factor, on discovering that he has been induced by fraud to part with the goods of his principal to an insolvent purchaser, who has placed the property in such a condition that it is difficult to follow it, has power to protect his principal by obtaining security.  Joslin v. Cowee, 52 N. Y. 90, 95.  This authority implies a right to reclaim the goods for the owner, if they can be reached in the possession of the fraudulent purchaser.  Undoubtedly, the commission merchant was bound to exercise reasonable care and prudence in making credits and in selling to responsible parties only; but it appears from the proof submitted by him that the purchasers were of good credit and reputation at the time of the sales.  It appears also from the statements before me that it was intended that sales might be made on credit, and that the commission merchant was not restricted to cash sales.  It was held in Van Alen v. Vanderpool, 6 Johns. 69, and in other cases, that a factor may sell on credit, without incurring risk, if it be the usage of trade at the place, and he be not restrained by his instructions, and does not unreasonably extend the term of credit, and provided he uses due diligence to ascertain the solvency of the purchaser.  Here the factor was authorized by the principal to sell on credit.  There is no proof of any delinquency on his part in giving credit to the purchasers.  He was deceived by fraud.  I am of opinion that the goods recovered by him from Weil, Dreyfuss & Co., on the claim that they were obtained from him by fraud, are still the property of the principal, and have been properly charged to its account as goods of the mill still unsold.  Of course the commission merchant must account for them when they are afterwards sold.  Award accordingly.